# IN THE COURT OF APPEALS OF IOWA

No. 23-1776
Filed February 7, 2024

IN THE INTEREST OF S.C.,
Minor Child,

L.H., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Julie G. Trachta, Linn County Advocate, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

The mother appeals termination of her parental rights to S.C., born December 2022.  This family first came to the attention of the Iowa Department of Health and Human Services (HHS) shortly after the mother gave birth to S.C. because of the mother's mental-health issues (including mental-health commitments during pregnancy).  HHS again received additional reports the following February about the mother allegedly using marijuana while caring for then-three-month-old S.C. and failing to adequately attend to the child's medical needs.  Around this same time, the mother rode with S.C. on her lap unrestrained in a moving car and left the infant unattended in an apartment.

These reports led to HHS removing the child that same month.  The mother was arrested and briefly incarcerated for fighting with and injuring police during that removal.  HHS tested S.C.'s hair, and the results were positive for methamphetamine and tetrahydrocannabinol (better known as THC).

The mother left Iowa for Illinois in March.  During that trip, she had more police interactions and was hospitalized in a mental-health facility for about two weeks.  The same month, the juvenile court adjudicated S.C. as a child in need of assistance.  The mother lived in both Iowa and Minnesota in the following weeks before becoming homeless.  She obtained housing two-and-a-half months before trial.

When obtaining a substance abuse evaluation in June, the mother denied methamphetamine use—even though S.C. tested positive for methamphetamine while in her care.  The mother subsequently missed almost half of her drug-testing appointments.  On the tests she did complete, her results came back negative for

all substances until August, when she tested positive for methamphetamine and cocaine on a patch after S.C.'s father "came to town." The mother claimed the positive test results were from sex with a drug user and refused to test after the positive result. HHS testified the patch measured ingestion, not sexual activity.

The mother participated in some mental-health services. She self-reported attending counseling and complying with a prescription-drug regimen. But HHS could not corroborate the self-report, and the mother's substance-abuse counselor reported she hadn't seen the mother "for some time" as of trial. The mother's attendance at visits with S.C. was inconsistent, and she made little progress with parenting skills despite being offered services to improve them.

From August to the termination trial, the mother did not attend any of S.C.'s medical appointments, and she claimed she "didn't even know [she] was able to attend [S.C.'s] appointments." She also refused to meet with HHS, and she did not attend any visits with S.C. after August 16. She told HHS on "several" occasions she planned to consent to termination.

At trial, the mother testified she was deliberately unemployed because she wanted to take care of her daughter. But the HHS worker testified the mother had been fired or quit "probably five or six jobs" during the life of the case. The mother said she stopped attending visits with S.C. "because of the fact it was a lot of pressure for me." She mentioned she stopped meeting with HHS and participating in services because it "stressed [her] out," so she "just chose not to go."

Meanwhile, S.C. was placed with maternal great-grandparents who were working to obtain their adoption license. The child was doing well in their care and her medical needs were met.

The county attorney, HHS, the court appointed special advocate, and S.C.'s guardian ad litem all recommended termination. The court terminated the mother's rights under Iowa Code section 232.116(1)(b), (e), and (h) (2023).

The mother appeals, and our review is de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.* The State must present clear and convincing evidence to support the grounds for termination. *Id.*

As to the statutory elements, the mother contends the State did not prove the child could not safely be returned to her care. While the requirement a child cannot safely return is an element of section 232.116(1)(h), it is not element of paragraphs (b) concerning abandonment or (e) concerning failure to maintain meaningful contact. Despite claiming to challenge these two grounds in a heading in her petition, the mother does not make any substantive challenge on appeal toward the statutory elements of (b) or (e), so we summarily affirm on those grounds. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

As to best interests, we note the mother's argument conflates best interests with the permissive bond exception at section 232.116(3)(c). *See, e.g.*, *In re A.L.*, No. 22-0422, 2022 WL 1658699, at *3 (Iowa Ct. App. May 25, 2022) ("As many parents do, the mother conflates a best-interests argument with arguments about permissive factors weighing against termination."). Assuming without deciding a substantive best-interests claim is presented, we reject it. In deciding a child's best interests under the statute, we give primary weight "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the

physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also consider the child's integration into the foster family and whether the foster family is willing to permanently integrate the child into the family. *Id.* § 232.116(2)(b). The mother abandoned the child and has taken limited steps to resume care or provide a safe home. She is unwilling or unable to engage with HHS and has not had consistent visitation with the child. S.C., meanwhile, is well-integrated into the great-grandparents' foster home, which has potential for adoption. Termination is in S.C.'s best interests.

On the permissive bond exception, section 232.116(3)(c) allows the juvenile court to decline termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." A parent resisting termination has the burden to prove this permissive exception by clear and convincing evidence, and our case law recognizes that—without more—neither a parent's love nor the mere existence of a bond is enough to prevent termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Assuming without deciding there is a bond between the mother and S.C., any potential detriment caused to S.C. by severing that bond is outweighed by the stability and safety afforded S.C. by termination and adoption. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests).

**AFFIRMED.**